UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 1:21-cr-00090-JMS-MJD |
| v. | ORDER ON MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A) |
| DAVID TAYLOR | (COMPASSIONATE RELEASE) |

Upon motion of ☒ the defendant ☐ the Director of the Bureau of Prisons for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), and after considering the applicable factors provided in 18 U.S.C. § 3553(a) and the applicable policy statements issued by the Sentencing Commission,

IT IS ORDERED that the motion is:

☒ DENIED.

☐ DENIED WITHOUT PREJUDICE.

☐ OTHER:

☐ FACTORS CONSIDERED: See attached opinion.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:21-cr-00090-JMS-MJD |
| ) | |
| DAVID TAYLOR, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

Defendant David Taylor has filed a motion seeking compassionate release under § 603 of the First Step Act of 2018, which is codified at 18 U.S.C. § 3582(c)(1)(A), and a Motion for Leave to Supplement his motion seeking compassionate release. [Filing No. 156; Filing No. 158.] For the reasons explained below, Mr. Taylor's Motion for Leave to Supplement is **GRANTED**, and his Motion for Compassionate Release is **DENIED**.

**I.**
**BACKGROUND**

In July 2023, Mr. Taylor pled guilty to one count of possession with intent to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. § 841(a)(1), and one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). [Filing No. 129; Filing No. 139.] The offense conduct is summarized as follows:

> On Friday, February 05, 2021, plain clothes detectives with the Indianapolis Metropolitan Police Department (IMPD) were conducting surveillance at the Loves Truck Stop located at 1875 Campbell's Crossing, in Tipton, Indiana. IMPD detectives had previously received a tip from the Fort Wayne Police Department that an individual named David Taylor would be delivering methamphetamine to an unknown location in the Indianapolis area and he would be driving a gray Nissan Altima, bearing Illinois license plate FP88836.

> At approximately 9:08 pm, detectives observed the above-mentioned gray Nissan Altima arrive at the Loves Truck Stop. David Taylor got out of the driver's seat of the car, went inside of the truck stop for several minutes, and then returned to the same vehicle. Taylor then drove onto US 31 heading south towards Indianapolis.
>
> Detectives followed Taylor southbound on US 31 and observed several lane violations as he continued onto North Keystone Avenue into Marion County, Indiana. Detectives were also aware that Taylor's driver's license was suspended. Uniformed IMPD officers initiated a traffic stop on the gray Nissan Altima on East 79th Street and Somerset Bay. Officers approached the vehicle and identified the driver as Taylor. Officers immediately observed what appeared to be a firearm resting on Taylor's lap. Officers retrieved the firearm and placed it on the roof of the vehicle. Taylor was removed from the vehicle and handcuffed. A female passenger was also removed from the vehicle and detained.
>
> An IMPD Narcotics Detection canine made a positive indication for the presence of illegal narcotics in the car. Officers searched the car and recovered approximately 12 ounces of a glass-like substance suspected to be methamphetamine from the center console of the car, in close proximity to where the firearm had been recovered. The suspected methamphetamine was packaged in three clear plastic bags.
>
> Taylor was placed under arrest and transported to IMPD North District police station. During a post-Miranda interview, Taylor stated that he had traveled from South Bend to Indianapolis to deliver methamphetamine to a residence. Taylor stated he had purchased the methamphetamine in the car for $3,250 and that he would be paid $500 for delivering it to an individual in Indianapolis. Taylor admitted to making multiple prior trips to deliver methamphetamine between South Bend and Fort Wayne. The defendant stated that it was his first time making a methamphetamine delivery to Indianapolis.
>
> The Marion County Forensic Laboratory examined the suspected methamphetamine recovered from Taylor's car and confirmed that the substance did contain methamphetamine and weighed a total of 332.54 grams. The methamphetamine was sent to the Drug Enforcement Administration (DEA) for further analysis. Testing indicated the methamphetamine was approximately 100% pure, +/- 6%, for a total of approximately 331.8 grams of pure methamphetamine.

[Filing No. 132 at 6-7.]

Mr. Taylor faced a guidelines range of 188 to 235 months of imprisonment. [Filing No. 132 at 40.] The Court sentenced him to 144 months of imprisonment (a variance due to his medical issues), followed by 8 years of supervised release. [Filing No. 139.] The Bureau of Prisons

3

("BOP") currently reports Mr. Taylor's anticipated release date (with good-conduct time included) as April 28, 2031. https://www.bop.gov/inmateloc/ (last visited July 17, 2025).

Mr. Taylor filed a *pro se* Motion for Compassionate Release on May 27, 2025, [Filing No. 156], and a Motion for Leave to Supplement on June 9, 2025, [Filing No. 158]. The Government has responded. [Filing No. 160.] The motions are now ripe for the Court's consideration.

## II.
### DISCUSSION

#### A.    Motion for Leave to Supplement

Shortly after filing his Motion for Compassionate Release and before the Government filed its response, Mr. Taylor filed a Motion for Leave to Supplement in which he submitted additional exhibits in support of his Motion for Compassionate Release. [Filing No. 158.] In its response, the Government did not object to Mr. Taylor's Motion for Leave to Supplement, and instead effectively consented to the motion by acknowledging the supplemental exhibits attached therein as if they were attached to his Motion for Compassionate Release. [Filing No. 160.]

In the interest of justice and because the Government effectively consented, the Court **GRANTS** Mr. Taylor's Motion for Leave to Supplement and considers his supplemental exhibits therein as exhibits within his Motion for Compassionate Release.

#### B.    Motion for Compassionate Release

The general rule is that sentences imposed in federal criminal cases are final and may not be modified. 18 U.S.C. § 3582(c). Yet under one exception to this rule, a court may reduce a sentence "after considering the factors set forth in [18 U.S.C. § 3553(a)] to the extent that they are applicable," if it finds that there are "extraordinary and compelling reasons" that warrant a reduction. 18 U.S.C. § 3582(c)(1)(A)(i).

4

The Sentencing Commission has set forth the following considerations when evaluating a request for compassionate release: First, whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement"; and second, whether the defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(a)(1)(A) and (a)(2). If a court finds that extraordinary and compelling reasons exists and that the defendant is not a danger to the safety of any other person or to the community, it goes on to consider the sentencing factors in 18 U.S.C. § 3553(a), "to the extent that they are applicable." U.S.S.G. § 1B1.13(a).

The Seventh Circuit has held that district courts have broad discretion in determining what constitutes "extraordinary and compelling reasons" under the statute. *United States v. Gunn*, 980 F.3d 1178, 1180-81 (7th Cir. 2020). The district court must "consider[] the applicant's individualized arguments and evidence," *United States v. Rucker*, 27 F.4th 560, 563 (7th Cir. 2022), but ultimately "[t]he movant bears the burden of establishing 'extraordinary and compelling reasons' that warrant a sentence reduction," *United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021). On this point, the United States Sentencing Commission recently amended the Guidelines Manual to identify several new circumstances as "extraordinary and compelling" reasons potentially warranting compassionate release. *See* U.S.S.G. § 1B1.13 (Nov. 2023).

Mr. Taylor argues that he establishes extraordinary and compelling reasons for compassionate release based on: (1) his health; (2) his family circumstances; and (3) his rehabilitative efforts. [Filing No. 156; Filing No. 158.] The Government opposes the motion. [Filing No. 160.] The Court addresses each of Mr. Taylor's arguments.

> 1.  *Mr. Taylor's Health*

Mr. Taylor asserts that he has numerous health issues and is not receiving adequate treatment in prison. [Filing No. 156-1 at 31-40.] He asserts that he suffers from Idiopathic Hypertrophic Obstructive Cardiomyopathy and that the BOP is unable to enter this specific condition as a diagnosis for him, which inhibits his care. [Filing No. 156-1 at 40.] He also asserts that he suffers from severe COPD, moderate emphysema, high blood pressure, plantar fasciitis, lower back arthritis, and has a pacemaker, among other health conditions, and that he takes several medications, one of which he asserts has potentially deadly side effects. [Filing No. 156-1 at 32; Filing No. 158.] He attaches medical records, emails with BOP medical staff, and medication information in support. [Filing No. 156-1; Filing No. 158-1.] He argues that he has filed numerous requests to receive a breathing machine to no avail, which has led to an increase in his suffering. [Filing No. 156-1 at 35-36.] He contends that after an alleged heart attack in March 2024, he received a heart monitor but believes it was installed wrong and argues that it is "impossible for the BOP to effectively treat his heart condition" due to "huge gaps of time before treatment is administered." [Filing No. 156-1 at 38-40 (emphasis omitted).]

The Government contends that Mr. Taylor's medical conditions are the same medical conditions that he was suffering from at the time he committed the instant offenses and at the time of sentencing, and that the Court considered his medical conditions at sentencing, providing a downward variance to account for his physical condition. [Filing No. 160 at 2.] The Government argues that his medical conditions do not qualify as an extraordinary and compelling reason warranting compassionate release. [Filing No. 160 at 4-5.] It asserts that he does not suffer from any terminal illness but rather chronic conditions and that his medical records show that he has had no fewer than 37 medical appointments and evaluations in the time since he arrived at USP

Terre Haute on March 2, 2024, including both regular appointments, sick visits, and appointments with specialists including a cardiologist, which shows that the BOP is able to provide and is providing Mr. Taylor with adequate long-term and specialized care. [Filing No. 160 at 5-8 (citing Filing No. 161 (sealed medical records)).] The Government asserts that Mr. Taylor's complaint regarding a breathing machine is moot as he received one on May 29, 2025, and argues that there is no evidence that Mr. Taylor suffered a heart attack in March 2024. [Filing No. 160 at 9-10.] It argues that if he is concerned about potential side effects from his medication, he can and should discuss that with the doctor who prescribed the medication. [Filing No. 160 at 10-11.]

In reply, Mr. Taylor reiterates his arguments and highlights that the Government does not contest the medical conditions that he suffers from and that his medical visits do not show that he is being adequately treated but rather that he is receiving substandard and ineffective care, as evidenced by no real improvements to his health. [Filing No. 162 at 2-7.]

Section 1B1.13(b)(1)(B) and (C) provide that an extraordinary and compelling reason exists where:

> **(B)** The defendant is--
>
>> **(i)** suffering from a serious physical or medical condition,
>> **(ii)** suffering from a serious functional or cognitive impairment, or
>> **(iii)** experiencing deteriorating physical or mental health because of the aging process,
>>> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> **(C)** The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

The Court finds that Mr. Taylor has not shown that he meets the requirements to show that his health is an extraordinary and compelling reason for release. He makes no argument that he is

unable to engage in self-care and his BOP medical records indicate ongoing and consistent regular and specialized treatment for his health conditions, including his heart condition, as summarized in the table below:

| Date | Details of Visit | Citation |
|---|---|---|
| 3/12/2024 | Physician evaluation | Filing No. 161-1 at 32-34 |
| 3/14/2024 | Dental clinic visit | Filing No. 161-1 at 93 |
| 3/25/2024 | X-rays for chronic low back pain | Filing No. 161-1 at 138-39 |
| 3/25/2024 | X-rays on chest for COPD and cardiac conditions, showing hyperinflated lungs and no radiographic evidence for an acute cardiopulmonary process | Filing No. 161-1 at 140-41 |
| 3/26/2024 | Sick call visit for complaint of pain in mouth; labs ordered | Filing No. 161-1 at 29-31 |
| 3/27/2024 | Sick call visit for complaint of swelling in neck; labs pending | Filing No. 161-1 at 26-28 |
| 4/3/2024 | X-rays for neck and back pain; images appeared normal | Filing No. 161-1 at 134-35 |
| 4/19/2024 | Emergency room visit on complaint of shortness of breath | Filing No. 161-1 at 21-23 |
| 5/2/2024 | Cardiologist appointment; multiple tests ordered including echocardiogram, Holter monitor, "full interrogation" of his pacemaker to assess battery life and lead function | Filing No. 161-1 at 117-19 |
| 5/6/2024 | Health services follow up, labs ordered, ultrasound ordered for possible Peyronie disease | Filing No. 161-1 at 11-14.] |
| 5/29/2024 | Optometry exam after complaint of vision problems, glasses ordered | Filing No. 161-1 at 8-9; see Filing No. 161-2 at 78 |
| 6/4/2024 | Outside provider pacemaker device check (result: normal device function); 6-month follow up scheduled, and medications reviewed | Filing No. 161-2 at 83; Filing No. 161-2 at 228-36 |
| 7/29/2024 | Sick call visit for pain; medication ordered | Filing No. 161-2 at 80-82 |
| 8/5/2024 | Echocardiogram | Filing No. 161-2 at 216-17 |
| 8/7/2024 | Optometry exam after complaint of vision problems, glasses ordered but not in yet | Filing No. 161-2 at 77-78 |
| 8/8/2024 | Health visit to receive glasses | Filing No. 161-2 at 210 |
| 8/12/2024 | Visit for placement of Holter Monitor | Filing No. 161-2 at 75 |
| 8/20/2024 | Physical evaluation | Filing No. 161-2 at 72 |
| 9/5/2024 | Reevaluation visit with cardiologist; medication adjusted that was potentially "contributing to his relative hypotension and | Filing No. 161-2 at 211-12 |

| | | |
|---|---|---|
| | dizziness" and 3-month follow-up with lipid profile scheduled | |
| 9/9/2024 | Plan of care visit; reviewed chronic conditions, medication, diagnostic and treatment options, and overall plan of care | Filing No. 161-2 at 92 |
| 9/23/2024 | X-ray of right hand after report of injury; swelling noting but no fracture or joint malalignment | Filing No. 161-2 at 208-09 |
| 9/24/2024 | Receipt of medical support stockings for swelling in legs | Filing No. 161-2 at 207 |
| 10/7/2024 | CT scan of lumbar spine, showing some loss of intervertebral disc height in areas and slight left and right exit foramen narrowing | Filing No. 161-2 at 202-03 |
| 10/11/2024 | Health services visit for abdominal pain; tests and x-rays ordered | Filing No. 161-2 at 47-48 |
| 10/15/2024 | X-ray of abdomen, noting no obstructions, suspicious calcifications, or gallstones | Filing No. 161-2 at 205-06 |
| 10/17/2024 | Sick call visit regarding gastrointestinal issues; abdomen exam completed, and heartburn and constipation medication prescribed | Filing No. 161-2 at 43-46 |
| 11/26/2024 | Outside provider pacemaker device check follow-up (result: normal device functioning) | Filing No. 161-2 at 192-200 |
| 1/10/2025 | Urine testing after complaint of hematuria | Filing No. 161-2 at 187-89 |
| 1/13/2025 | Abdominal wall ultrasound and examination (result: normal) | Filing No. 161-2 at 39; Filing No. 161-2 at 185-86 |
| 2/6/2025 | Cardiologist follow-up; medications adjusted and increased, and 2-week Zio monitor ordered to assess arrhythmia; follow up scheduled after tests completed | Filing No. 161-2 at 180-81 |
| 3/7/2025 | CT scan of abdomen and pelvis; no abnormalities identified | Filing No. 161-2 at 177-79 |
| 3/11/2025 | Chronic care visit; medications refilled, labs ordered, and follow-up scheduled | Filing No. 161-2 at 25-29 |
| 3/13/2025 | Cystoscopy examination | Filing No. 161-2 at 172-74 |
| 3/19/2025 | X-ray of left heel after complaints of heel pain; revealed small left plantar calcaneal spur | Filing No. 161-2 at 170 |
| 4/29/2025 | Sleep study conducted; revealed mild obstructive sleep apnea | Filing No. 161-2 at 162-66 |
| 5/17/2025 | Report issued from 2-week Zio monitor | Filing No. 161-2 at 147-61 |
| 5/29/2025 | Cardiologist visit with "lengthy discussion" of conditions, symptoms, and treatment plans; additional scans were ordered and medication was adjusted; received CPAP machine | Filing No. 161-2 at 143-45 |
| 6/16/2025 | Sick call visit after complaints of worsening allergies | Filing No. 161-2 at 1-2 |

Far from showing large gaps in care or the denial of care, these medical records demonstrate that the BOP has been responsive to Mr. Taylor's complaints of pain and his medical conditions and has provided him specialized medical care, specific devices, and other health aids. While Mr. Taylor's medical conditions are unfortunate, he has not shown that required specialized medical care is unavailable, and "to the extent that [he] challenges the conditions and medical care . . . more generally, a compassionate-release motion is not the right vehicle" for that argument. *United States v. Miller*, 2022 WL 2187555, at *2 (7th Cir. June 16, 2022); *United States v. Bridgewater*, 995 F.3d 591, 599 (7th Cir. 2021).

The Court finds that Mr. Taylor has not met his burden of establishing that his medical conditions rise to the level of an extraordinary and compelling reason to grant him compassionate release, whether considered alone or together with any other reason, including his rehabilitative efforts.

### 2. Family Circumstances

Mr. Taylor argues that his family circumstances, specifically caring for his 85-year-old grandmother who is incapacitated, living in unsafe conditions, and suffering from severe mobility issues, constitute an extraordinary and compelling reason for compassionate release. [Filing No. 156-1 at 43.] He contends that he is her only available caregiver. [Filing No. 156-1 at 43.] He submits three emails from his grandmother in support. [Filing No. 156-1 at 108-10.]

The Government argues that Mr. Taylor has not demonstrated that his grandmother is incapacitated or unable to care for herself and highlights that in the emails, she does not describe being bedbound or chairbound but instead putting together her new walker, which she purchases herself after her old one broke, and describes receiving assistance from someone named Dawn [Filing No. 160 at 12.]

Mr. Taylor did not address his family circumstances in his reply. [Filing No. 162.]

U.S.S.G. § 1B1.13(b)(3)(D) provides that an extraordinary and compelling reason exists when the defendant can show the incapacitation of the defendant's grandparent when the defendant would be the only available caregiver for the parent. "While the relevant policy statement, § 1B1.13(b)(3)[ ], does not define 'incapacitated,' the term's plain meaning—'made incapable of or unfit for normal functioning'—and the statutory context, especially the associated need for a 'caregiver,' make clear that 'incapacitated' implies that the person is incapable of caring for themself." *United States v. Reedy*, 2024 WL 5247954, at *11 (N.D. Ill. Dec. 30, 2024) (quoting *Incapacitated*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/incapacitated); *States v. Lance*, 2023 WL 7927751, at *3 (C.D. Ill. Nov. 16, 2023) ("the evidence [plaintiff] submitted shows only that his father 'has limited mobility, . . . numbness in both hands, cannot sit or stand for too long, has uneven balance, . . . needs help getting dressed in the morning,' . . . 'can't drive because he can't turn his head[,] . . . [and] can't lift anything over 30 pounds or lift anything over his head . . . While this certainly shows that [plaintiff's] father has limitations and needs assistance, it appears he can still engage in some self-care activities and he is not incapacitated'").

The Court finds that Mr. Taylor has not shown that he meets the requirements of U.S.S.G. § 1B1.13(b)(3)(D). While his grandmother acknowledges in two of her three emails that "it's getting close to [her] not [being] able to take care of [her]self," this do not establish that his grandmother is incapacitated and his own statements in support are insufficient. [Filing No. 156-

11

1 at 108-10.] Moreover, he does not submit evidence that he is the only available caretaker.[1] While unfortunate, the health of Mr. Taylor's grandmother is not an extraordinary or compelling reason for compassionate release, whether considered alone or in conjunction with any other reason.

### 3. Rehabilitation

Mr. Taylor submits evidence of several programs and courses he has completed while incarcerated and asserts that his rehabilitative efforts, in addition with the above circumstances, constitute an extraordinary and compelling reason for release. [Filing No. 156-1 at 41; Filing No. 156-1 at 56-102; Filing No. 156-1 at 118-40; Filing No. 158-1 at 4-6.]

The Government asserts that his participation in programming while incarcerated is admirable but does not justify early release. [Filing No. 160 at 14.]

Mr. Taylor reiterates that he submitted evidence of his rehabilitation. [Filing No. 162 at 1.]

While Mr. Powell's rehabilitation and achievement of certificates while incarcerated is commendable, [Filing No. 156-1 at 56-102; Filing No. 156-1 at 118-40; Filing No. 158-1 at 4-6], "rehabilitation cannot serve as a stand-alone reason for compassionate release" no matter how exceptional, *United States v. Peoples*, 41 F.4th 837, 842 (7th Cir. 2022) (quotations and citation omitted); 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13(d) (Nov. 2023). Whether considered alone or in conjunction with any other reason, the Court finds that Mr. Taylor's rehabilitation is not an extraordinary or compelling reason to grant him compassionate release.

---

[1] Although a couple years have passed, the Court notes that prior to his sentencing, Mr. Taylor told Probation Officers that his grandmother lived in Fort Wayne, Indiana, with Mr. Taylor's son and grandchildren—a fact corroborated by his grandmother herself, which undermines Mr. Taylor's argument. [Filing No. 132 at 26-27.]

The Court, in its discretion, finds that Mr. Taylor has not carried his burden to show that there are extraordinary and compelling reasons for his release, whether considered alone or in conjunction with any other reason. In any event, even if the Court found that extraordinary and compelling reasons exist, it also finds that Mr. Taylor is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(a)(2). Mr. Taylor has a long and troubling criminal history, including 5 felony convictions for serious offenses such as theft, robbery, intimidation, and arson. [Filing No. 132 at 9-25.] In addition, he has 18 misdemeanor convictions, many involving violent conduct—most notably, multiple instances of battery and domestic violence against women. [Filing No. 132 at 9–25.] He committed the current offense—armed drug trafficking of 331.8 grams of pure methamphetamine—while on probation for criminal mischief, which itself occurred while he was on parole for arson. [Filing No. 132 at 23–24.] His violent and extensive criminal history and the nature and circumstances of the instant offense, especially the quantity of pure methamphetamine, demonstrate Mr. Taylor's complete and constant disregard for the law and that he poses a danger to the safety of others and the community, making compassionate release unwarranted.

In sum, the Court finds that Mr. Taylor has not presented extraordinary and compelling reasons to release him, whether considered alone or in conjunction with any other reason, and also finds that he is a danger to the safety of any other person or to the community. Given these determinations, the Court need not address whether the sentencing factors listed in 18 U.S.C. § 3553(a) weigh in favor of his release. *See United States v. Ugbah*, 4 F.4th 595, 598 (7th Cir. 2021).

## III.
### CONCLUSION

For the reasons stated above, the Court:

- **GRANTS** Mr. Taylor's Motion for Leave to Supplement, [158]; and

- **DENIES** his Motion for Compassionate Release, [156].

Date: 7/21/2025

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**

**Distribution via United States Mail to:**

David Taylor
USP Terre Haute
P.O. Box 33
Terre Haute, IN 47808